HON. JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.H.R., by and through his parent M.R.V.; S.K. by and through his parent K.J.; K.A.S. by and through her parent I.S.; Z.O.S. by and through his parents H.H. and C.S.; K.V. by and through her parent T.V.;<br><br>                Plaintiffs,<br>vs.<br><br>MARYANNE LINDEBLAD, in her official capacity as State Medicaid Director; DOROTHY FROST TEETER, in her official capacity as Director of the Washington State Health Care Authority; WASHINGTON STATE HEALTH CARE AUTHORITY;<br><br>                Defendants. | No.   3:15-CV-05701 JLR<br><br>PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION<br><br>Note for Motion Calendar:<br>October 30, 2015<br><br>Oral Argument Requested |

## I. MOTION AND SUMMARY

Plaintiffs are a group of infants and toddlers who, because of their complex medical needs, require skilled nursing services around the clock in order to live safely with their families. There is no dispute that each of these very young children need skilled nursing care, nor that the best place for these children is at home with their families. Despite agreement that these children are best served at home, surrounded by family and friends, two (A.H.R. and Z.O.S.) are placed in institutions, one (K.V.) recently spent three months in a hospital unnecessarily, and two (S.K.

MOTION FOR PRELIMINARY INJUNCTION- 1 OF 22
NO. 3:15-CV-05701 JLR

**Northwest Justice Project**
**401 Second Avenue S, Suite 407**
**Seattle, Washington 98104**
**Phone: (206) 464-1519  Fax: (206) 624-7501**

and K.A.S.) are in immediate danger of institutional placement.  Why are these children confined to or at risk of institutionalization at such a young age?  Defendants, through the Health Care Authority ("HCA"), have failed to arrange for the life-sustaining nursing care they need and that the Defendants are is required to provide.

The law is clear.  Defendants, as state officials in charge of the Medicaid program administered by HCA, must "provide (or ensure the provision of) [Medicaid] services, not merely to pay for them." *Dunakin v. Quigley*, 2015 Westlaw 1619065, *17 (W.D. Wash. Apr. 10, 2015), *quoting John B. v. Emkes,* 852 F. Supp. 2d 944, 951 (M.D. Tenn. 2012); 42 U.S.C. § 1396d(a). Defendants must ensure that covered Medicaid services, like private duty nursing care, are provided—not just authorized—with "reasonable promptness." 42 U.S.C. § 1396 a(a)(8); *Doe v. Chiles,* 136 F.3d 709, 711 (11th Cir. 1998). Moreover, HCA must ensure that the provision of private duty nursing services to the Plaintiffs is in a non-institutional setting, at home with their parents, consistent with the Americans with Disabilities Act. 42 USC § 12132; 28 C.F.R. §§ 35.310(d); 41.51 (d); *Townsend v. Quasim,* 328 F.3d 511, 518 (9th Cir. 2003) (State of Washington violated the ADA when it failed to provide long term care services in integrated non-institutional settings). For the five young children in this lawsuit, and many others, HCA has failed in its obligation to provide medically necessary private duty nursing care in non-institutional settings. The impact on these children and families of the unavailability of nursing care has been separation of their families and exhaustion of their parents.

Plaintiffs respectfully move for preliminary relief pursuant to Fed. R. Civ. Proc. 65. Plaintiff requests that the Court enjoin Defendants to "arrange and pay for" private duty nursing care that they have been assessed to need, so that A.H.R. and Z.O.S. may leave the institutions where they are confined as soon as possible and to prevent S.K., K.V., and K.A.S. from

**Northwest Justice Project**
**401 Second Avenue S, Suite 407**
**Seattle, Washington 98104**
**Phone: (206) 464-1519 Fax: (206) 624-7501**

becoming institutionalized. Plaintiffs specifically request that the Court order the Defendants to immediately contract with available qualified nurses capable of providing private duty nursing care to the Plaintiffs in their homes in the amount the Defendants have authorized.

## II. ISSUES PRESENTED

1. Do the Plaintiffs demonstrate a likelihood of success on the merits, because they are entitled to the private duty nursing services that they are assessed to need with reasonable promptness in the "most integrated setting appropriate to their needs" consistent with the Medicaid Act and the Americans with Disabilities Act?

2. Will the Plaintiffs suffer irreparable harm if the Defendants are not enjoined?

3. Does the balance of hardships tip in favor of the Plaintiffs?

4. Is a preliminary injunction in the public interest?

5. Should the Court waive the requirement of a bond?

## III. EVIDENCE RELIED UPON

Plaintiffs rely on their Complaint, and the Declarations of (1) Kelly Evans, MD; (2) Emily Gallagher, MD; (3) Gregory Redding, MD; (4) Amanda Striegl, MD; (5) K.J.; (6) H.H.; (7) M.R.V.; (8) Sheri Smith; (9) Molly Austin; (10) Charles Cowan, MD.

## IV. FACTS

**A. All of the Plaintiffs need skilled nursing care to survive**

The five plaintiffs are infants and toddlers between the ages of 10 months and two years old who, because of their complex medical needs, require the assistance of a nurse or other skilled provider at all times. Plaintiffs are all eligible for Medicaid and have been authorized to

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

receive 16 hours of skilled nursing care in their homes.[1] The medical necessity of Plaintiffs' private duty nursing care is not in dispute.

Plaintiff Z.O.S. has been placed in an institution since being discharged on February 21, 2015 because his family could not care for him around the clock without the assistance of skilled nursing.[2] Similarly, Plaintiff A.H.R. is institutionalized because, at the time of his discharge from Seattle Children's Hospital on August 28, 2015, his family had no private duty nursing care to meet his needs at home.[3]

Plaintiff S.K., who relies upon a mechanical ventilator to breathe, can only fill five overnight shifts per week with nurses that will contract with HCA.[4] The other two evenings and every day his parents provide substitute care.[5] But his parents' ability to continue to do so may soon be exhausted due to his mother's pregnancy and inability to assist in his care.[6] As a result, without the full amount of authorized private duty nursing care soon, it is likely that S.K. will need to institutionalized.

Plaintiff K.A.S.'s mother and father provide all of her nursing care since she lost her nurses in September of 2015.[7] At least one parent must remain awake and vigilant all night to ensure that K.A.S. does not need suctioning or other skilled interventions to breathe.[8] K.A.S. will likely be institutionalized if nursing support is not provided very soon.

---

[1] The parents of each plaintiff are required by state regulation to provide substitute care for up to 8 hours per day, in order to ensure that their children's complex medical needs are met around the clock. Wash. Admin. Code 182-551-3000.
[2] Decl. of Amanda Striegl, at ¶12.
[3] Decl. of Emily Gallagher, at ¶7.
[4] Decl. of Gregory Redding, at ¶4; Decl. of Kristin Jaynes, at ¶7.
[5] Decl. of Kristin Jaynes, at ¶8.
[6] Decl. of Gregory Redding, at ¶7; Decl. of Kristin Jaynes, at ¶10.
[7] Decl. of Kimberly Evans, ¶15.
[8] *Id.* at ¶16; Decl. of I.S. at ¶5.

**Northwest Justice Project**
**401 Second Avenue S, Suite 407**
**Seattle, Washington 98104**
**Phone: (206) 464-1519  Fax: (206) 624-7501**

Plaintiff K.V. relies on a ventilator to breathe 24 hours per day, after radiation treatment for a cancerous brain tumor caused her to be unable to breathe independently.[9] She recently spent more than three months in Seattle Children's Hospital waiting for the Defendants to make enough nurses available to her so that she could be safely discharged.[10] Seattle Children's discharged K.V. without all of her nursing support in place, only able to locate nurses to provide day shifts for five days a week. K.V.'s mother provides all of the care that the Defendants have not arranged for, sometimes going more than 24 hours without nursing support.[11]

**B. Defendants are responsible for "arranging and paying for" private duty nursing to Plaintiffs**

Defendant Frost Teeter is the director of the Health Care Authority ("the Authority"), Washington State's single state agency for the administration of its Medicaid program. RCW 74.09.530. Defendant Lindeblad is the state Medicaid director, responsible for oversight of the Medicaid program. Both Defendants have an obligation under Title XIX of the Social Security Act to "make medical assistance available" and to "arrange for" these children to receive all medically necessary medical care. 42 U.S.C. §1396a(a)(10)(A); 42 U.S.C. §1396a(a)(43). As of 2010, when the Affordable Care Act made changes to the Medicaid program, Congress made clear that Medicaid is not merely required to pay for care, but to ensure that "care and services" are themselves provided. 42 U.S.C. §1396d(a). For the purpose of this motion Defendants are referred to collectively as "HCA".

---

[9] Decl. of T.V. at ¶4, 5.
[10] *Id*. at ¶7, 8.
[11] *Id*. at 8.

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

# V. ARGUMENT AND AUTHORITY

## A. Standard for Issuance of a Preliminary Injunction

This Court is authorized to issue preliminary injunctions by Fed. R. Civ. P. 65(a). "A Plaintiff seeking a preliminary injunction must establish that he is [1] likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council Inc.*, 129 U.S. 365, 374 (2008)). Where a plaintiff makes a strong showing of irreparable harm and that the injunction is in the public interest, they need not make as great a showing with respect to likelihood of success on the merits. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-1135 (9th Cir. 2011). If the Court's injunction is "mandatory" rather than "prohibitory", then the Plaintiffs must meet the additional burden of showing that the law and facts clearly favor the Plaintiffs. *Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir.1979) (quoting *Martinez v. Mathews,* 544 F.2d 1233, 1243 (5th Cir.1976)).

The Ninth Circuit clarified that it's longstanding "serious questions", or sliding scale approach to preliminary relief, survives *Winter* when applied as part of the four element *Winter* test. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-1135 (9th Cir. 2011). Under *Alliance for Wild Rockies,* "serious questions going to the merits" and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff establishes a likelihood of success on the merits and that the injunction is in the public interest. While Plaintiffs can show a likelihood of success on the merits, this Court can also issue an injunction if it finds that Plaintiffs have at least presented serious questions going to the merits of the issue. *Id.*; *see M.R. v. Dreyfus*, 697 F.3d 706, 725-26 (9th Cir. 2011).

**Northwest Justice Project**
**401 Second Avenue S, Suite 407**
**Seattle, Washington 98104**
**Phone: (206) 464-1519  Fax: (206) 624-7501**

Plaintiffs make a strong showing as to the irreparable harm if an injunction is not granted: they will continue to be institutionalized or face institutionalization if the Defendants are not ordered to make medical assistance available to them. They will be separated from their families, or face continued separation if HCA does not immediately provide medical assistance to them. The balance of hardships tips sharply in their favor, since requiring the Defendants to obtain nursing care for five patients will have little if any impact on their operations serving all of Washington State's Medicaid population, and the injunction is in the public interest because it merely requires the Defendants to comply with state and federal law. Finally, Plaintiffs present a strong likelihood of success on the merits due to the unequivocal mandate that they receive medically necessary care in their home and community under the Medicaid program and the Americans with Disabilities Act.

**B.  The Plaintiffs are Likely to Succeed on the Merits**

1.  <u>Defendants must "arrange for" private duty nursing services with reasonable promptness</u>

Plaintiffs' First Claim for Relief alleges that the Defendants have violated their right to have medical assistance made available, or to have it arranged for. Defendants have failed to ensure that the medically necessary skilled nursing that Plaintiffs need to live in the community is available. Instead, Defendants have relied on safety nets such as hospitals, institutional settings, and parents to provide medical care to Plaintiffs. Because Defendants bear the responsibility of ensuring that Plaintiffs actually receive this care, they have violated Plaintiffs rights to receive it. The law *clearly* requires the Defendants to make assistance available, and Plaintiffs' inability to obtain this assistance, despite their diligence, shows that the Defendants have failed in this duty.

**Northwest Justice Project**
**401 Second Avenue S, Suite 407**
**Seattle, Washington 98104**
**Phone: (206) 464-1519  Fax: (206) 624-7501**

Private duty nursing is one of the enumerated categories of service in the Medicaid Act. 42 U.S.C. §1396d(a)(8). It is defined in the Code of Federal Regulations, as "nursing services for recipients who require more individual and continuous care than is available from a visiting nurse or routinely provided by the nursing staff of the hospital or skilled nursing facility…." 42 C.F.R. §440.80. Under this regulation, private duty nursing must be provided by a registered nurse or a licensed practical nurse under the direction of the recipient's treating physician. *Id.*

Under § 1396a(a)(43), states must "cover every type of health care or service necessary for EPSDT corrective or ameliorative purposes that is allowable under § 1396d(a)," *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 590 (5th Cir. 2004), including private duty nursing services. 42 U.S.C. § 1396d(a)(8). For children, state Medicaid agencies have a special obligation to ensure that each child receives all the covered services she is identified as needing, consistent with the EPSDT definition of medical necessity in §1396d(r)(5). *See Katie A. v. Los Angeles County*, 481 F.3d 1150, 1154 (9th Cir. 2007); *Rosie D. v. Swift*, 310 F.3d 230, 232 (1st Cir. 2002).

The Medicaid program requires that HCA do more than just authorize private duty nursing coverage. It must take proactive steps that ensure children receive these medically necessary, life-sustaining services. *See Clark v. Richman*, 339 F.Supp.2d 631, 646-47 (M.D.Pa.2004) ("[state's] obligations with respect to EPSDT services require more proactive steps, such as actual provision of services"); *see also Katie A. v. Los Angeles Co.*, 481 F.3d 1150, 1158 (9th Cir. 2007)("states have an obligation to see that the services are provided" under EPSDT). The Ninth Circuit further noted that the state cannot shift the responsibility onto others, stating:

> Even if a state delegates the responsibility to provide treatment to other entities such as local agencies or managed care organizations, the ultimate responsibility to ensure treatment remains with the state.

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

*Katie A. v. Los Angeles Co.*, 481 F.3d at 1159.

Further, HCA is not free to wait many months to put the services in place. It must pursue the services with "reasonable promptness." 42 U.S.C. § 1396 a(a)(8); *Doe v. Chiles,* 136 F.3d 709, 711 (11th Cir. 1998) (upholding injunction ordering that "[R]easonably prompt" provision of services be no more than 90 days). Plaintiffs need this care. Defendants have authorized it. But they must do more and ensure that the Plaintiffs actually get it.

Plaintiffs and their medical providers have tried to locate nurses and nursing agencies who are already Medicaid providers, but cannot locate any who are capable of providing more nursing. The nursing companies currently serving K.A.S. and S.K. have stated they have no more nurses to fill their shifts.[12] Z.O.S. attempted to find nursing with four different agencies, none of whom could adequately staff his shifts so that he could come home from the hospital.[13] K.V. spent three months in a hospital looking for nurses, when she could have otherwise been living at home.[14]

The unavailability of nurses to meet the Plaintiffs' needs is due in part to low Medicaid reimbursement when the services are provided at home.[15] While nursing agencies can locate and hire nurses—sometimes—they have difficulty retaining those nurses, who often leave for better paying jobs.[16] In sum, there isn't a shortage of nurses willing to work with the Plaintiffs, there is a shortage of nurses willing to work for the wages that Defendants are willing to pay them. The net effect of this is that Defendants are unable to arrange for nursing for the Plaintiffs in an amount that is medically necessary.

---

[12] Decl. of K.J. at ¶7; Decl. of I.S. at ¶4.
[13] Decl. of H.H. at ¶11.
[14] Decl. of T.V.
[15] Decl. of Molly Austin; Decl. of Sheri Smith.
[16] *Id.*

**Northwest Justice Project**
**401 Second Avenue S, Suite 407**
**Seattle, Washington 98104**
**Phone: (206) 464-1519  Fax: (206) 624-7501**

Because Defendants failed to "arrange for" the provision of plaintiffs' private duty nursing care at home, and delegated this responsibility to the parents of these children, Plaintiffs have been stuck in institutions or have gone without the care that they are assessed to need.  The law and facts clearly favor the Plaintiffs on their claims that their rights to receive medical assistance, have it arranged for, and for it to be reasonably prompt have been violated.

2. <u>Defendants Must Ensure That Services Are Delivered In the Most Integrated Setting – At Home With Their Families and Friends.</u>

The Plaintiffs are also likely to succeed on the merits because Defendants' actions and policies, as described above, threaten to unnecessarily institutionalize them or have already done so. The Defendants have an obligation to provide medically necessary services to Plaintiffs, as argued in Part IV.B.1 *supra*. Under the ADA, these services must be provided in the most integrated setting appropriate to Plaintiffs' needs. 42 U.S.C. §12132; 28 C.F.R. §35.130(d). Because the most integrated setting is their homes, the Defendants actions discriminate against them by requiring them to in live in a more restrictive setting to receive the full amount of nursing care that Defendants have authorized.

Title II of the ADA broadly prohibits discrimination against individuals with disabilities in public services, including the unnecessary provisions of such services in segregated settings. 42 U.S.C. §12131 *et seq*. Title II states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and

services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. §12131(2).

To address Congress' concern regarding the segregation of individuals with disabilities as a form of discrimination, the Attorney General of the United States promulgated an "integration regulation" which provides that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. §35.130(d). The "most integrated setting" is "a setting that enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible." 28 C.F.R. Pt. 35, App. A; *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 592 (1999). This mandate advances one of the principal purposes of Title II of the ADA—ending the isolation and segregation of people with disabilities. *ARC v. Braddock*, 427 F.3d 615, 618 (9th Cir. 2005).

In *Olmstead*, the Supreme Court of the United States concluded that the discrimination forbidden under Title II of the ADA includes "unnecessary segregation" and "[u]njustified isolation" of people with disabilities. *Olmstead*, 527 U.S. at 582, 600-01. The Court found unjustified isolation of people with disabilities amounts to discrimination because it "perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life" and "severely diminishes everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment." *Id.* at 560-61. The Court found that that "[u]njustified isolation….is properly regarded as discrimination based on disability." *Id.* at 597. The Court held public entities are required to provide community-based services for persons with disabilities who would otherwise be entitled to institutional services when a) treatment professionals have determined that community-based services are appropriate for an individual; b) the individual

**Northwest Justice Project**
**401 Second Avenue S, Suite 407**
**Seattle, Washington 98104**
**Phone: (206) 464-1519  Fax: (206) 624-7501**

does not oppose such services; and c) the services can be reasonably accommodated, taking into account the resources available to the state and needs of others who are receiving disability services from the state. *Id.* at 607; *Penn. Protection & Advocacy, Inc. v. Penn. Dep't of Public Welfare*, 402 F.3d 374, 379-80 (3rd Cir. 2005); *Frederick L. v. Dep't of Public Welfare of Commonwealth of Penn.*, 364 F.3d 487, 493 (3rd Cir. 2004); *Fisher v. Oklahoma Health Care Auth.*, 335 F.3d 1175, 1181 (10th Cir. 2003). When these requirements are met, states must provide services to individuals in community settings rather than institutions. *See Fisher*, 335 F.3d at 1181.

The *Fisher* case, decided in the 10th Circuit, is illustrative for the matter before this Court. Like Plaintiffs in this matter, the Plaintiffs in *Fisher* were authorized to receive Medicaid-funded services at home. *Id.* at 1177. When the state decided to limit the number of prescription medications that Plaintiffs could receive in this setting, Plaintiffs sought a preliminary injunction, arguing that the change in policy violated the integration mandate of Title II because it would force them out of their homes and communities and into institutions to obtain the prescriptions they needed. *Id. at* 1177-78. The Tenth Circuit reversed the district court's denial of a preliminary injunction to the Plaintiff and grant of summary judgment to defendant. *Id. at* 1178.

The Court held that "*Olmstead* does not imply that disabled persons who, by reason of a change in state policy, stand imperiled with segregation, may not bring a challenge to that state policy under the ADA's integration regulation without first submitting to institutionalization." *Id. at* 1182. In reaching this conclusion, the Court pointed out that "there is nothing in the plain language of the regulations that limits protection to persons who are currently institutionalized," explaining that such protection "would be meaningless if Plaintiffs were required to segregate

**Northwest Justice Project**
**401 Second Avenue S, Suite 407**
**Seattle, Washington 98104**
Phone: (206) 464-1519  Fax: (206) 624-7501

themselves by entering an institution before they could challenge an allegedly discriminatory law or policy that threatens to force them into segregated isolation." *Id. at* 1181.

Many courts have granted preliminary injunctive relief pursuant to the ADA's integration mandate to protect Plaintiffs like K.A.S., K.V. and S.K. from the risk of institutionalization. *See M.R. v. Dreyfus*, 697 F.3d 706, 732-33 (9th Cir. 2012); *Pashby v. Cansler*, 2011 WL 6130819 (E.D.N.C. Dec. 8, 2011); *Haddad v. Arnold*, 784 F.Supp.2d 1284 (M.D.Fla. 2010); *Long v. Benson*, 2008 WL 4571903 (N.D.Fla. Oct. 14, 2008), *aff'd*, 383 Fed.Appx. 930 (11th Cir. 2010); *Marlo M. v. Cansler*, 679 F.Supp.2d 635, 637 (E.D.N.C. 2010). See also *Cota v. Maxwell-Jolly*, 688 F.Supp. 2d 980 (N.D. Cal. 2010*); V.L. v. Wagner*, 669 F.Supp. 2d 1106, 1109 (N.D. Cal. 2009); *Brantley v. Maxwell-Jolly*, 656 F.Supp. 2d 1161, 1170 (N.D.Cal. 2009); *Crabtree v. Goetz*, 2008 WL 5330506 (M.D. Tenn. 2008); *M.A.C. v. Betit*, 284 F.Supp. 2d 1298, 1309 (D. Utah 2003); *Makin v. Hawaii*, 114 F.Supp. 2d 1017, 1034 (D.Haw. 1999).

The present case fits squarely within the framework of *Olmstead*. Defendants offer private duty nursing services to allow Plaintiffs to live at home, yet in reality this benefit exists only on paper. Plaintiffs are unable to find these services in their community because Defendants have not arranged for sufficient numbers of providers to meet their need. The only place that Plaintiffs can go to receive this care is a hospital or nursing home. The only more egregious example would have been if Defendants had a rule stating that private duty nursing could only be provided in a nursing home or hospital. Yet, through failing to ensure access to skilled nursing services by retaining adequate numbers of nurses, the Defendants have implicitly done the same.

Plaintiffs have thus demonstrated a substantial likelihood of success on the merits of their claims under Title II of the ADA and Olmstead. They are "qualified individuals with a disability" within the meaning of Title II of the ADA. Additionally, Defendants are public

**Northwest Justice Project**
**401 Second Avenue S, Suite 407**
**Seattle, Washington 98104**
**Phone: (206) 464-1519  Fax: (206) 624-7501**

entities and subject to requirements of Title II of the ADA. Plaintiffs' treating providers believe it is in their best interests to continue to receive care in the community. They have been prescribed nursing services by their treating physicians and are authorized to receive it in their home.

Defendants' actions create a substantial likelihood that Plaintiff S.K. , K.V., and K.A.S. will be institutionalized. Plaintiffs are at risk of institutionalization if they do not receive nursing services in an amount sufficient to prevent her condition from deteriorating such that they require hospital care. It is only a matter of time until Plaintiffs' parents become incapable of providing adequate care and an emergency occurs. Further, Defendants actions have already forced A.H.R. and Z.O.S. to live in institutions to receive the medically necessary medical care that was authorized for them.

**C. The Plaintiffs will suffer irreparable injury**

Many courts have held that reductions or denials of public benefits, "even reductions of a relatively small magnitude, impose irreparable harm on recipient families." *Beno v. Shalala,* 30 F.3d 1057, 1063-64 n. 10 (9th Cir.1994). In the recent case of *M.R. v. Dreyfus*, a three-judge panel of the Ninth Circuit recognized that low-income recipient of government benefits "may demonstrate a risk of irreparable injury by showing that enforcement of a proposed rule 'may deny them needed medical care.'" 697 F.3d 706, 732-33 (9th Cir. 2012) (quoting *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell–Jolly,* 572 F.3d 644, 658 (9th Cir.2009), *reversed and remanded on other grounds by Douglas v. Indep. Living Ctr.* 132 S.Ct. 1204 (2012)); *see also Rodde v. Bonta,* 357 F.3d 988, 998–99 (9th Cir. 2004); *Lopez v. Heckler,* 713 F.2d 1432, 1437 (9th Cir. 1983). The Ninth Circuit further found that the increased risk of institutionalization in *M.R. v.*

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

*Dreyfus* supported a finding of irreparable harm. *M.R. v. Dreyfus*, 697 F.3d at 733 ("These predictable consequences will put plaintiffs at serious risk of institutionalization.").

Plaintiffs are recipients of Medicaid. By definition, they are "categorically needy", low-income persons. Neither they, nor their parents, can afford the cost of private duty nursing. Without nursing, they have been forced into institutions, or been forced to take their chances living in the community without adequate nursing support. At least one child is followed by Child Protective Services due to the lack of nursing.[17] Either choice faced by these patients threatens to imminently cause irreparable harm, either through institutionalization or the denial of medically necessary medical care. Denial of care would be catastrophic, possibly ending in hospitalization, injury, or death. Institutionalization, against their parent's wishes, is an irreparable harm of its own. As stated in the declaration of Charles Cowan:

> In sum, institutionalization of infants and toddlers can have serious, life-long impact on both their physical and mental health. Prolonged institutionalization keeps medically fragile children like the plaintiffs in settings in which they are at greater risk for life-threatening infections. Unnecessary institutionalization also deprives these children of the opportunity to bond with their parents, to experience play and to have normal social and emotional development. As the studies indicate, children have a limited "window of opportunity" for this critical early developmental growth. If that opportunity is lost, the impact can be life-long.[18]

Because the Defendants' actions are likely to result in irreparable harm, the Court should enter an injunction.

**D. The balance of hardships tips sharply in the Plaintiffs' favor**

The proposed restraints and injunction require the Defendants to provide the care that they don't dispute that the Plaintiffs need. Plaintiffs on the other hand, will lose the ability to live at home with their families, in their community, or continue to suffer the loss of private duty nursing. Without skilled nursing support, Plaintiffs K.A.S., K.V., and S.K. will likely end up

---

[17] Decl. of H.H. at ¶7.
[18] Decl. Charles Cowan, ¶15.

**Northwest Justice Project**
**401 Second Avenue S, Suite 407**
**Seattle, Washington 98104**
**Phone: (206) 464-1519  Fax: (206) 624-7501**

seeking emergency medical treatment, become hospitalized, or die. The fact that the Department may incur an expense by providing these benefits pending the final outcome of the litigation does not outweigh the harm to Plaintiffs. *See, e.g.*, *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). The *Lopez* court noted:

> Faced with such a conflict between financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in Plaintiff's favor.

*See also Nat'l Wildlife Fed. v. Nat'l Marine Fisheries Serv.,* 235 F. Supp. 2d 1143, 1162 (W.D. Wash. 2002); *Haskins v. Stanton*, 794 F.2d 1273, 1277 (7th Cir. 1986) (where an injunction seeks to require defendants to comply with existing law, the injunction imposes no burden but "merely seeks to prevent the defendants from shirking their responsibilities").

### E.  The Injunction Will Advance the Public Interest

Preventing the high costs of emergency medical care, hospitalization, and negative health impacts to a child in need of medical assistance will advance the public interest. *Ind. Living Ctr. of Southern California, Inc. v. Maxwell-Jolly*, 572 F.3d 644, 659 (9th Cir. 2009), *reversed and remanded on other grounds by Douglas v. Indep. Living Ctr.* 132 S.Ct. 1204 (2012) (*citing to Schweiker v. Hogan,* 457 U.S. 569, 590 (1982)). "[T]here is a robust public interest in safeguarding access to health care for those eligible for Medicaid, whom Congress has recognized as 'the most needy in the country.'" *Id*.

### F.  The Court Should Waive the Bond Requirement

Because Plaintiffs are indigent, the Court has the discretion to and should waive the bond requirement. *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113 (9th Cir. 2005); *see also Crowley v. Local No. 82*, 679 F.2d 978, *judg. reversed on other grounds* 467 U.S. 526 (1st Cir. 1982).

**Northwest Justice Project**
**401 Second Avenue S, Suite 407**
**Seattle, Washington 98104**
**Phone: (206) 464-1519  Fax: (206) 624-7501**

## VII. CONCLUSION

For the foregoing reasons, the Court should, pursuant to Fed. R. Civ. P. 65(a), enter a preliminary injunction requiring Defendants to make nursing available to the Plaintiffs by contracting with nurses capable and willing to provide medical assistance to Plaintiffs, until further order of the Court.

DATED this 8th day of October, 2015.


**NORTHWEST JUSTICE PROJECT**

By:  s/Scott Crain
Scott Crain, WSBA#37224
Attorneys for Plaintiffs

**Northwest Justice Project**
**401 Second Avenue S, Suite 407**
**Seattle, Washington 98104**
**Phone: (206) 464-1519  Fax: (206) 624-7501**

**CERTIFICATE OF SERVICE**

I certify, under penalty of perjury under the laws of the United States of America and the State of Washington, that on October 8, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel on the Electronic Mail Notice List as shown below.

Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case:
    William T. Stephens  Bills3@atg.wa.gov
    Nissa Iversen NissaI@atg.wa.gov

DATED: October 8, 2015 at Seattle, Washington.


s/ Scott Crain
Scott Crain
Attorneys for Plaintiffs

Northwest Justice Project
401 Second Ave. S #407
Seattle, Washington 98104
Telephone 206-707-0900
Email: scottc@nwjustice.org

MOTION FOR PRELIMINARY INJUNCTION- 18 OF 22
NO. 3:15-CV-05701 JLR

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501