The Honorable James L. Robart

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| A.H.R., ET AL.;<br><br>Plaintiffs,<br><br>vs.<br><br>WASHINGTON STATE HEALTH CARE AUTHORITY, ET AL.;<br><br>Defendants. | No.  3:15-CV-005701 JLR<br><br>[PROPOSED]<br>ORDER OF DISMISSAL WITH PREJUDICE |

## I.    INTRODUCTION

1.    The parties to this action have agreed to the issuance of this Order, in complete settlement of the claims in A.H.R., et al. v. Washington State Health Care Authority, et al. ("the Action").

## II.    PARTIES

2.    This Action concerns Plaintiffs A.H.R., K.A.S. and S.K., and Defendants Washington State Health Care Authority ("HCA"), MaryAnne Lindeblad (in her official capacity as Medicaid Director of HCA), and Dorothy Frost Teeter (in her official capacity as Director of HCA) (collectively, "the Parties"). This Order resolves all disputed claims in the Action.

3.    HCA administers the "Apple Health for Kids" program, which provides health care coverage to low-income children in Washington State under RCW 74.09.470. Apple Health for

[PROPOSED] ORDER OF DISMISSAL- 1 OF 3
NO. 3:15-CV-005701 JLR

Kids coverage is extended to children eligible for the State's Medicaid Program (Social Security Act, Title XIX); children eligible for the State's Children's Health Insurance Program ("CHIP") (Social Security Act, Title XXI); and children with family income up to 300% of the federal poverty level failing to qualify for citizenship or legal status requirements under Medicaid and CHIP.

4.    The Action was filed on behalf of three Medicaid eligible children who remain in the litigation, S.K., A.H.R. and K.A.S. The children are represented by independent counsel.

### III.    FINDINGS

5.    The Court entered a preliminary injunction on January 8, 2016 ordering the defendants to arrange for medically necessary private duty nursing for the plaintiffs.

6.    The Parties subsequently requested a stay of litigation deadlines to allow for settlement negotiations, which culminated in the Settlement Agreement which is attached as Exhibit A to this Order.

7.    The Settlement Agreement fully and fairly resolves all the claims between the parties and is hereby incorporated into this Order. The Settlement Agreement requests that the Court dismiss this action and retain jurisdiction to enforce the settlement.

8.    The plaintiff children are represented by independent counsel.

**Accordingly, It is Judged and Declared That:**

1.    The Court will retain jurisdiction for the purpose of enabling the Parties to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance, modify,

[PROPOSED] ORDER OF DISMISSAL- 2 OF 3
NO. 3:15-CV-005701 JLR

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

and/or resolve any dispute regarding the terms or conditions of this Order. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).

2. The Settlement Agreement is hereby incorporated into the terms of this Order;

3. *Order of Dismissal.* It is hereby **ORDERED**, that Plaintiffs' remaining claims and causes of actions are dismissed with prejudice.

DATED this 2nd day of December, 2016.

_____
UNITED STATES DISTRICT JUDGE

Presented by:
NORTHWEST JUSTICE PROJECT
By:

/s/Scott Crain
Scott Crain, WSBA#37224
ScottC@nwjustice.org
Lindy MacMillan, WSBA#46107
lindym@nwjustice.org
Attorneys for Plaintiffs

401 Second Ave. S #407
Seattle, WA 98104

ROBERT W. FERGUSON
*Attorney General*

/s/William Stephens
William Stephens, WSBA No. 24254
Senior Counsel
NISSA IVERSEN, WSBA No. 46708
Assistant Attorney General
Office of the Attorney General
7141 Cleanwater Drive SW
P.O. Box 40124
Olympia, WA 98504-0124
Telephone: (360) 586-6565
Fax: (360) 586-6657
Email: bills3@atg.wa.gov
        Nissa1@atg.wa.gov

Attorneys for Defendants

[PROPOSED] ORDER OF DISMISSAL- 3 OF 3
NO. 3:15-CV-005701 JLR

# Exhibit A

## SETTLEMENT AGREEMENT

This Settlement Agreement is between Plaintiffs S.K., A.H.R., and K.A.S. ("Plaintiffs") and the Washington State Health Care Authority ("HCA"); Dorothy Teeter, Director of HCA; and MaryAnne Lindeblad, Medicaid Director of HCA ("Defendants") (collectively, "the Parties"). This Agreement is a global settlement regarding the disputed claims in the Action referenced below.

## RECITALS

1.      Plaintiffs commenced this Action on September 28, 2015 in the U.S. District Court for the Western District of Washington against Defendants. Plaintiffs are three Medicaid-eligible children. Plaintiff Z.O.S. died prior to the settlement of this matter and was dismissed without prejudice. Plaintiffs K.V. and H.A. moved from Washington prior to the settlement of this matter and were dismissed without prejudice. Plaintiffs alleged that Defendants failed to timely arrange for Plaintiffs to receive medically necessary Medicaid services under the Early and Periodic Screening, Diagnosis, and Treatment ("EPSDT") mandate, in particular private duty nursing. Defendants denied all allegations. The Court entered a preliminary injunction requiring HCA to arrange for the Plaintiffs to receive private duty nursing on January 8, 2016.

2.      The Parties acknowledge that a real and immediate dispute has arisen as to their legal obligations to each other and now desire to fully and finally settle all disputes between them regarding the claims in Plaintiffs' complaint.

## AGREEMENT

1.      **Definitions.**

For purposes of this Agreement, the following terms shall mean:

1.1     "Action" means: A.H.R. et al. v. Washington Health Care Authority, et al., Cause No. 3:15-CV-05701 JLR, an action pending in the U.S. District Court for the Western District of Washington.

1.2     "Agreement Execution Date" means: the date on which this Agreement is fully executed.

1.3     "Contractor" means: DSHS and any MCO engaged by HCA under its managed care arrangements, or any other entity engaged by HCA to fulfill its obligations to Medicaid-eligible children aged 0 to 21 receiving private duty nursing.

1.4     "Court" means: the U.S. District Court for the Western District of Washington.

1.5     "DSHS" means: the Washington State Department of Social and Health Services.

1.6     "Effective Date of Settlement" means: the date on which the last signature is dated on this Agreement.

1

1.7     "Enrollee" means: any person up to age 21 eligible for Apple Health for Children medical assistance, including assistance under Titles XIX and XXI of the Social Security Act and state-funded children's affordable healthcare, who is also authorized to receive private duty nursing.

1.8     "Plaintiffs" means: S.K., A.H.R., and K.A.S.

1.9     "Managed Care Organization" means: any entity contracting with HCA to provide medical assistance pursuant to RCW 74.09.522, Wash. Admin. Code 182-538 et. seq. or 42 C.F.R. 438 et. seq. and shall be abbreviated "MCO".

1.10    "Medically Intensive Children's Program" means that program carried out by DSHS pursuant to WAC 182-551-3000 and any other agreement between DSHS and HCA and shall be abbreviated "MICP".

1.11    "Plaintiffs' Counsel" means: Northwest Justice Project.

1.12    "Private duty nursing" means those services as contemplated in 42 C.F.R. 440.80 and Wash. Admin. Code 182-551-3000 and 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.

1.13    "Releasees" means: Defendants and their Successors-in-Interest and Representatives.

1.14    "Representatives" means: representatives, attorneys, agents, directors, officers, employees, insurers and reinsurers.

1.15    "Settlement" means: the settlement to be consummated under this Agreement.

1.16    "Successor-in-Interest" means: an entity's or person's estate, legal representatives, heirs, successors or assigns, and any other entity or person who can make a legal claim by or through such entity or person.

2.     **Representations and Warranties.** The Parties, and each of them, represent and warrant that they are voluntarily entering into this Agreement as a result of arm's-length negotiations and that, in executing this Agreement, they are relying upon their own judgment, belief and knowledge, and the advice and recommendations of their own counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof. The Parties, and each of them, further represent and warrant that they have carefully read the contents of this Agreement; they have made such investigation of the facts pertaining to the Settlement, this Agreement and all of the matters pertaining thereto as they deem necessary; and this Agreement is signed freely by each person executing this Agreement on behalf of each party. Each individual executing this Agreement on behalf of any other person does hereby represent and warrant to the other parties that he or she has the authority to do so.

3.     **No Admission of Liability.** The Parties understand and agree that this Agreement embodies a compromise and settlement of disputed claims, and that nothing herein shall be deemed to constitute an admission of any wrongdoing by any of the Releasees and/or Defendants. Neither the fact nor the terms of this Agreement shall be offered or received

2

in evidence in any action or proceeding for any purpose, except in an action or proceeding to enforce this Agreement or arising out of or relating to the Stipulated Motion for Approval of Settlement and Order of Dismissal.

**4.    Agreements regarding individual plaintiffs' services.**

4.1.1    Defendant HCA agrees to continue to provide assistance to "arrange for" nursing for Plaintiffs A.H.R., K.A.S., and S.K. as if the preliminary injunction entered by the Court on January 8, 2016 remained in full effect. This requirement will terminate for any Plaintiff if any such Plaintiff is determined to be ineligible for further services under the private duty nursing program.

4.1.2    Defendants agree to allow the Plaintiffs the use of any unused nursing hours that accrued between September 1, 2015 and the Effective Date of Settlement by making those unused nursing hours available for use. Defendants shall calculate "unused hours" by determining the number of hours that each Plaintiff was eligible to receive and subtracting from that number the actual number of hours billed by the providers of each Plaintiff. As of the date of settlement, these hours are:

> For A.H.R.:  Zero hours.
> For S.K.:  4,774 hours.
> For K.A.S.:  2,521 hours.

Plaintiffs shall be entitled to use these hours at any time, and in any amount that they determine to be beneficial to them. Plaintiffs may use these hours for private duty nursing or personal care services, at the election of the Plaintiff. With respect to personal care services, each Plaintiff will need to apply for and be granted eligibility for such services, if that has not already occurred. If any Plaintiff chooses to use these hours for personal care, HCA will work with its contractors to ensure the Plaintiffs will have the ability to use these hours accordingly. The use of these hours may not be used to decrease the number of private duty nursing or MICP hours authorized for the Plaintiffs. Defendants shall communicate to Plaintiffs' providers the availability of these hours for Plaintiffs' use. In the event that Plaintiffs attempt to use these hours, but are unable to use them due to the unavailability of nursing or personal care, Defendants agree to consider the potential use of a single-case agreement to retain qualified providers for Plaintiffs. Each Plaintiff shall have the ability to use his or her unused hours during the time period beginning on the date of execution of this Agreement and ending exactly three years thereafter.

**5.    Agreements regarding Defendants' duties under EPSDT**

5.1    *Notice.* Defendants agree to provide notice of the following to participants in the DSHS-managed MICP and private duty nursing recipients in managed care:

5.1.1    HCA will provide additional information about the MICP and the Defendants' role with respect to the program. The information will be in a form and language that is calculated to be understandable by the parents or guardians of the affected population. The information shall include, at a minimum, information regarding: (1) the Defendants' duty

3

to arrange for medically necessary medical treatment for Enrollees; (2) information about the Enrollees' right to receive timely access to private duty nursing services; (3) the Enrollees' right under the Americans with Disabilities Act to receive services in the least restrictive setting; (4) the settlement of this lawsuit; (5) where Enrollees may get assistance from HCA when they are having difficulty obtaining nursing; and (6) contact information for questions relating to the settlement on plaintiffs' counsels' website and phone number (206-707-7205). Notice to Enrollees from HCA shall occur as soon as reasonably practical, but in no event later than March 1, 2017. Notice to Enrollees from the MCOs shall occur no later than June 1, 2017.

In particular, HCA will (1) revise the current MICP Fact Sheet to incorporate the items listed above; (2) ensure that the MICP Fact Sheet or a similar document is provided to MCOs; (3) provide the MICP Fact Sheet or a similar document to every person who applies for MICP coverage; (4) provide the MICP Fact Sheet to hospitals for distribution to families when discussing the option of MICP; and (5) ensure that the MICP Fact Sheet is posted on the HCA and DSHS websites.

5.1.2   By April 1, 2017, Defendants will provide mandatory training relevant to DSHS and MCO staff, including but not limited to Case Resource Managers, Nurse Case Consultants, complex case managers, program managers, and utilization review staff that work with Enrollees who receive private duty nursing. The topics of the training shall be the following: (1) the filing of this Action and the allegations made therein; (2) the requirement that HCA and DSHS provide services in the least restrictive setting; (3) the duty of HCA and its contractors to arrange for medically necessary services; (4) the duty of DSHS and MCO staff to resolve complaints about network inadequacy or unavailability of providers by arranging for medically necessary services; and (5) the identity and availability of staff within HCA to provide technical assistance with arranging for medically necessary services. HCA shall include both the program manager for MICP and the program manager for adult private duty nursing in this training. By May 1, 2017, Defendants will provide the attendance record and confirm the attendance of all relevant staff at trainings to Plaintiffs' counsel.

5.2   *Resolution of Complaints of Unavailability of Nursing*

5.2.1   *DSHS/HCA Memorandum of Understanding (MOU)*. HCA will update its MOU with DSHS regarding the provision of private duty nursing services so that it is consistent with this Agreement.

5.2.2   *Managed Care*. HCA shall provide adequate oversight of MCOs regarding resolution of complaints of unavailability of private duty nursing, including review of private duty nursing recipient cases to determine whether Enrollees are underutilizing the benefit due to the unavailability of nursing. If HCA determines that Enrollees are underutilizing the benefit due to the unavailability of nursing, HCA shall communicate with the MCO about arranging for private duty nursing and

4

ensuring that Enrollees have services arranged for. As part of its communications, HCA will explore with the MCO the option of executing a single-case agreement at a rate sufficient to retain qualified providers as required by HCA's contract with the MCO.

5.3   *Resolution for Institutionalized Enrollees*

    5.3.1   HCA, or its contractors, will agree to establish policies and procedures for communication to families regarding what steps HCA or its contractor will take to facilitate discharge from an institutional or group home setting to the Enrollee's family home when private duty nursing is needed and not available. HCA will establish such policies and procedures by August 1, 2017. HCA will provide plaintiffs' lawyers the draft protocol prior to its adoption. At a minimum, these policies and procedures will include:

        a.   Training for DSHS and MCO Nurse Case Managers and Case Resource Managers on developing discharge facilitation plans.

        b.   Placement of discharge facilitation plans in a DDA client's Individual Service Plan.

        c.   Realistic timelines for actions taken by HCA or its contractors to achieve discharge.

        d.   Timeline for when HCA should begin to consider the option of securing a single-case agreement to arrange for nursing for an Enrollee or continuing working with existing rates or agencies.

        e.   Communication with pediatric hospitals or other hospitals serving medically complex children, including Seattle Children's Hospital and Mary Bridge Hospital, regarding HCA and its contractors' availability to assist with discharge planning and identification of a lead person within HCA or its contractors to coordinate discharge facilitation with hospital systems.

5.4   *Management of Care Permitted; Preservation of "Arrange For".*

    5.4.1   Nothing herein shall be construed to modify, waive, limit, or expand Defendants' obligations and/or ability to require that medical assistance be medically necessary as determined by the medical director or designee, to manage care or utilization, or to employ care management or case management techniques for mental health services including but not limited to authorized treatment plans; preauthorization requirements based on the type of service; concurrent and retrospective utilization review; and utilization management practices, discharge coordination and planning.

    5.4.2   Nothing in this Agreement is intended to limit the Defendants' ability to utilize managed care or fee-for-service to provide medically necessary private duty nursing services. Nothing in this Agreement is intended to

5

limit or reduce Defendants' duties to comply with EPSDT, federal Medicaid law, or state law related to Plaintiffs' entitlements under applicable laws.

6.    **Attorneys Fees and Costs Claims.** The Parties agree to settle Plaintiffs' claims for costs and fees in the amount of $44,000. The payment shall be made within five (5) business days following the dismissal of the Complaint with prejudice. The payment shall be made in accordance with written instructions to be given by the Plaintiffs' counsel to the Defendants' counsel.

7.    **Pending and Dismissing Litigation.**

7.1    *Retention of Jurisdiction.* Upon signing of this Agreement, the Parties shall submit a stipulated motion for dismissal pursuant to FRCP 41, the effectiveness of which is conditioned upon the Court incorporating the terms of the settlement into its dismissal order and retaining jurisdiction to effectuate the dismissal order. The proposed order to the Court shall request that the Court approve the settlement, incorporate the settlement into the order of dismissal, and retain jurisdiction for three years to effectuate the terms of the settlement.

7.2    *Dismissal of Litigation.* The Parties agree that this matter shall be dismissed with prejudice after the signing of this Agreement.

7.3    *Release and Discharge:* In consideration of the actions to be taken by the Defendants as called for by this Agreement, each party hereby releases and forever unconditionally and irrevocably discharges each other party of and from any and all claims, actions, demands, causes of action, complaints, agreements, promises (express or implied), contracts, undertakings, covenants, guarantees, grievances, damages (including, without limitation, actual, compensatory, consequential, exemplary, treble, punitive or otherwise), attorneys' fees and legal costs, injunctive relief and declaratory relief, whether known or unknown, of whatsoever kind or nature that each had, now has, or hereafter can, shall, or may have related to or arising out of claims that are asserted, or that could have been asserted, in the Complaint. This release shall not be construed to release or waive claims which accrued after the date of the filing of the Complaint.

8.    **Termination of Agreement to Settle Claims.**

8.1    *Court Rejection.* If the Court declines to sign the proposed Dismissal Order as referenced in Paragraph 9 of this Agreement, the Parties shall negotiate in good faith to cure any deficiency identified by the Court or find another mutually agreeable resolution that preserves the Agreement.

8.2    *Court Modification.* If the Court issues an order in the Action modifying the Agreement, and if within 31 calendar days after the date of any such ruling, the Parties have not agreed in writing to proceed with all or part of this Agreement as modified by the Court or by the Parties, then, provided that no appeal is then pending from such ruling, this Agreement shall automatically terminate, and thereupon become null and void, on the 31st calendar day after issuance of the order referenced in this section.

6

9.      **Consequences of Termination.** If the Agreement is terminated and rendered null and void for any reason, then the following shall occur:

9.1     Reversion of Action. The Action shall revert to its status as of June 16, 2016.

9.2     Releases and Terms Void. All Releases given or executed pursuant to this Agreement shall be null and void and none of the terms of the Agreement shall be effective or enforceable.

10.     **Miscellaneous.**

10.1    *Dispute Resolution.* The Parties agree that any dispute regarding the terms, conditions, releases, enforcement or termination of this Agreement shall be resolved through no-cost mediation provided by the Court. If mediation is unsuccessful, or if no-cost mediation is not available from the Court, then either party may seek to resolve the dispute through the Court.

10.2    *Governing Law.* This Agreement shall be governed by the laws of the United States and the State of Washington, with venue in the U.S. District Court for the Western District of Washington. In the event of a conflict of law regarding contractual interpretation, Washington law shall govern.

10.3    *Severability.* The provisions of this Agreement are not severable.

10.4    *Amendment.* Before entry of an order dismissing this litigation, this Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties. Following entry of a dismissal order, this Agreement may be modified or amended only by written agreement signed on behalf of all Parties.

10.5    *Waiver.* The provisions of this Agreement may be waived only by an instrument in writing executed by the waiving party. The waiver by any party of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

10.6    *Construction.* None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision thereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause the provision to be construed against the drafter thereof.

10.7    *Further Assurances.* Each of the Parties agree, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith promptly execute and deliver such other documents and take such other actions as may be necessary to consummate the subject matter and purpose of this Agreement.

10.8    *Survival.* All representations, warranties and covenants set forth herein shall be deemed continuing and shall survive the Effective Date of Settlement.

10.9    *Entire Agreement.* This Agreement contains the entire agreement among the Parties relating to this Settlement. No agreements, representations, oral statements, understandings, or courses of conduct that are not expressly set forth

7

in this Agreement shall be implied or will be binding on the parties unless made in writing and signed by all of the Parties.

10.10    *Counterparts.* This Agreement may be executed by exchange of executed faxed or PDF signature pages, and any signature transmitted in such a manner shall be deemed an original signature. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, when taken together, shall constitute one and the same instrument.

10.11    *Binding Effect.* This Agreement binds and inures to the benefit of the parties hereto, their assigns, heirs, administrators, executors, and successors-in-interest, affiliates, benefit plans, predecessors, and transferees, and their past and present shareholders, officers, directors, agents, and employees.

SIGNED AND EXECUTED this _21_ day of December, 2016.

WASHINGTON STATE
HEALTH CARE AUTHORITY

By:    DOROTHY FROST TEETER

Its:    DIRECTOR

A.H.R., K.A.S., and S.K.

By:    Scott Crain #37224

DIRECTOR, WASHINGTON STATE
HEALTH CARE AUTHORITY

Dorothy Frost Teeter,
In her official capacity

MEDICAID DIRECTOR, WASHINGTON
STATE HEALTH CARE AUTHORITY

MaryAnne Lindeblad,
In her official capacity

8